Filed 8/24/21  Chen v. eBay CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THEO CHEN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> EBAY, INC., <br><br> Defendant and Respondent. | A158417 <br><br> (Alameda County Super. Ct. No. RG15780778) |

Plaintiffs and appellants are 10 individuals who sell (or sold) products on eBay.  In 2015, they filed a putative class action suit against eBay and PayPal, the entity that provided online payment services.  Some four years later, and following extensive discovery, plaintiffs filed a motion for class certification seeking certification of two classes:  one comprised of sellers involved in disputes with buyers, the other comprised of sellers adversely affected by eBay's amended performance ratings system.  In a comprehensive, thoughtful decision that thoroughly analyzed the law and the evidence, the trial court denied certification of both classes.  As to the first class, the court found that plaintiffs had failed to show a "uniform practice" that could be subject to class treatment and therefore common issues would not predominate, and as to the second, that the proposed class would not be "manageable or superior."

1

Plaintiffs appeal, asserting as to the first class that the trial court abused its discretion, and as to the second that plaintiffs "established liability through common proof." We reject both arguments, and we affirm, concluding that the trial court properly exercised its broad discretion in denying class certification.

## BACKGROUND

### The Parties and the Pleadings

Plaintiffs and appellants are 10 California residents who are current or former sellers on eBay, all of whom registered for accounts there and had active listings of goods, or sold goods, on eBay's website.[1]

Defendant and respondent is eBay, a global e-commerce platform connecting buyers and sellers, alleged by plaintiffs to have well over 100,000,000 active users.

Plaintiffs filed their original complaint in August 2015. It was a putative class action that named two defendants, eBay and PayPal, the entity that provided online payment services for individuals and businesses. In November 2015, the case was removed to Federal District Court, and four months later remanded back to superior court. A first amended complaint was filed, and both defendants filed demurrers, rulings on which led to a second amended complaint filed in February 2017, the operative complaint here.

The second amended complaint alleged 23 causes of action, 13 against eBay alone, seven against PayPal alone, and three against both defendants. Both defendants demurred again, the upshot of which was an order of August

---

[1] Plaintiffs are Theo Chen, Edgar Amirkhanyan, Eugene Cobb, Gary George, Nazar Pailevanian, Nicole Pitteloud, Kim Bunch, Francis Jancik, John Hamisch, and Nicole Jones. An eleventh plaintiff was dismissed.

17, 2017, sustaining the demurrer without leave to amend to all but three causes of action—the first, for breach of contract against both defendants; the 17th, for violation of the covenant of good faith and fair dealing against eBay; and the 23rd against PayPal.[2] Plaintiffs sought writ review of the August 17 order, which we denied.

The first cause of action focuses on disputes between buyers and sellers, and alleges that in ruling on such disputes eBay "almost always" rules in favor of buyers. Such practice, plaintiffs allege, breaches the terms in eBay's user agreement, which plaintiffs allege requires eBay to consider evidence submitted by the parties to the dispute. The claim asserted in this cause of action came to be referred to below the "money back guarantee" claim, a label we sometimes use here.

The 17th cause of action focuses on how eBay rates the performance of sellers on its site, and alleges that in August 2014, and without warning, eBay updated the criteria used to rate sellers' performance and unfairly applied the ratings system retroactively. The claim asserted in this cause of action came to be referred to below as the "sellers rating system" claim, a label we sometimes use here.

In January 2018, the case was reassigned for all purposes to the Honorable Winifred Smith, a most experienced Superior Court Judge.

**The Motion for Class Certification**

On May 3, 2019, plaintiffs filed a motion for class certification seeking certification of classes for both causes of action. The motion was accompanied

---

[2] In July 2019, plaintiffs moved to dismiss the two claims against PayPal, and pursuant to a stipulated request the court entered judgment for PayPal. Plaintiffs appealed, and on March 2, 2021, we filed our opinion affirming the judgment: *Chen v. PayPal* (2021) 61 Cal.App.5th 559.

by numerous declarations—20 to be exact—many of which were from people who were sellers on eBay.

As to the first cause of action, plaintiffs sought to certify a money back guarantee class consisting of "all persons or entities who are domiciled in California who, at any time between January 1, 2010 and December 31, 2018, were sellers listing and selling items using the eBay internet platform." Plaintiffs asserted that class certification was proper given the alleged "common practice . . . not to consider the evidence of the eBay sellers" in resolving buyer-seller disputes, essentially to "ensure" that buyers cannot lose dispute resolution cases.

As to the 17th cause of action plaintiffs' sought to certify a sellers rating system class consisting of "all persons or entities who are domiciled in California who were sellers listing and selling items on the eBay internet platform continuously during the time period of August 20, 2013 through August 20, 2014."

On June 14, eBay filed opposition to the motion, accompanied by declarations of two eBay employees, Kristine Diemoz and Suman Chhabria, the latter of whom was eBay's director of buyer protection. The declarations authenticated almost 200 pages of exhibits.

On July 8, plaintiffs filed their reply, along with objections to the Diemoz and Chhabria declarations.

On July 15, eBay responded to plaintiffs' evidentiary objections. It also filed its own objections to certain testimony in the declarations plaintiffs had filed in support of their motion. The next day plaintiffs submitted a letter objecting to the court giving any consideration to eBay's objections.

Following a July 19 hearing, on July 26, Judge Smith filed her order denying class certification, a comprehensive, seven-page, single-spaced

analysis.  The order began with a description of plaintiffs' claims, followed by an exhaustive citation of class action law interspersed with her analysis of how the issues and evidence before her interacted with that law.  Specifically, following discussion of the "standard for class certification," Judge Smith described—and analyzed—"ascertainability," "numerosity," "predominance of common questions of law and fact," "commonality," "manageability and superiority,"  and "typicality," pertinent portions of which analysis will be described in detail below.  Suffice to say here that as to the money back guarantee claim, Judge Smith found that plaintiffs had failed to show a "uniform practice" that could be subject to class treatment and therefore common issues would not predominate, and as to the sellers rating systems claim, she found that the proposed class would not be "manageable or superior."

Judge Smith's order also sustained eBay's objections to the hearsay statements in the declarations plaintiffs had submitted and overruled plaintiffs' objections to the Diemoz and Chhabria declarations.

**The Motion for Reconsideration**

On August 13, plaintiffs filed a motion for reconsideration, eBay filed opposition, and plaintiffs a reply.  Following a hearing on September 13, on September 20, Judge Smith filed her six-page order denying it.  After first holding that the motion did not identify any new evidentiary facts that could not have been presented in the original motion and did not identify any new law, she went on to specifically confirm the reasons why the seller ratings claim would be unmanageable as a class, as will be quoted below.

On September 20, plaintiffs filed their appeal.

## DISCUSSION

**The Law and the Standard of Review**

Class actions are statutorily authorized by Code of Civil Procedure section 382: "[W]hen the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." In order to obtain class status, the class action proponent bears the burden of establishing the propriety of class certification, which requires that the proponent "must establish the existence of both an ascertainable class and a well-defined community of interest among the class members. [Citations.] The community of interest requirement involves three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.]" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 (*Linder*).) And "[t]o establish the requisite community of interest, the proponent of certification must show . . . that questions of law or fact common to the class predominate over the questions affecting the individual members . . . . In essence, this means 'each member must not be required to individually litigate numerous and substantial questions to determine his [or her] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants.'" (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913–914, citations omitted.)

As to how a ruling on class certification is reviewed, *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022 (*Brinker*) confirms the

6

law: "On review of a class certification order, an appellate court's inquiry is narrowly circumscribed. 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]' (*Fireside Bank v. Superior Court* [(2007)] 40 Cal.4th [1069,] 1089; see also *Hamwi v. Citinational-Buckeye Inv. Co.* (1977) 72 Cal.App.3d 462, 472 ['So long as [the trial] court applies proper criteria and its action is founded on a rational basis, its ruling must be upheld'].) Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence. (*Sav-On Drug Stores, Inc. v. Superior Court* [(2004)] 34 Cal.4th [319,] 328–329.)"

In *Morgan v. Wet Seal, Inc.* (2012) 210 Cal.App.4th 1341, 1354–1355, we affirmed the denial of class certification. Doing so, we discussed the applicable law, including that we review an order denying class certification under the abuse of discretion standard. That standard presents a daunting challenge to plaintiffs here, as our highest court has described: plaintiffs must demonstrate that Judge Smith's order was "so irrational or arbitrary that no reasonable person could agree with it." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) This hardly describes Judge Smith's order here.

**Judge Smith Did Not Abuse Her Discretion in Denying Certification of the Sellers' Rating System Claim**

Plaintiffs' first argument is that Judge Smith abused her discretion with respect to the sellers' rating system class when she determined it was unmanageable.[3]  Plaintiffs have not demonstrated any such abuse—indeed, they really do not even try.

By way of background, eBay requires that in order to sell on its marketplace, a seller must meet minimum performance standards.  And one who fails to meet the minimum standards may have his or her account restricted, limited, or suspended.  The seller performance standards were first introduced by eBay in 2009, and updates were made in 2011 and 2012.  Then, on March 11, 2014, eBay published its spring seller update announcing among other things that beginning with the August 20, 2014 evaluation, eBay would again be updating the seller performance standards, this time by moving to a single measure—what eBay calls the "transaction defect rate" and plaintiffs call the "seller defect" policy.

The new policy is entitled "Seller Performance Standards," and reads as follows:  "If you don't meet the minimum performance standards, we may put limits on your selling activity or lower your search placement until your performance improves.  We may also restrict you from selling items on eBay if your performance falls significantly below the minimum requirements."  And it adds this:  "Note:  We monitor eBay.com for sellers who may be creating poor buying experiences at higher rates, in shorter time frames, or in different areas than other sellers, according to these standards.  These

---

[3] Plaintiffs have chosen to address the issues in reverse order, and begin with the 17th cause of action and argument as to the sellers' rating system class, to which they direct over 75 percent of their argument.  We thus proceed in the order plaintiffs have chosen.

accounts may be restricted, limited, suspended, or have their seller level changed to below standard."

The March spring seller update was e-mailed to all eBay members and delivered to their eBay message centers.[4]  And between April and August 2014, eBay reminded sellers about the updated standards; it also provided resources and guidance to sellers as to how to ensure that their seller performance ratings would not be adversely affected by the update.

As was the case under the earlier seller performance evaluations, the August 2014 standards used a "lookback" period to evaluate a seller's performance on prior transactions.  That is, sellers were evaluated on their transactions occurring within (1) the preceding three months for "high-volume" sellers or (2) the preceding 12 months for "low-volume" sellers.[5] eBay also provided various protection measures to ensure that the 2014 seller rating update did not unfairly affect sellers.

The above evidence was part of the voluminous record before Judge Smith when plaintiffs sought class certification on the seller rating system claim, certification Judge Smith denied, finding that "[t]he seller ratings system claim would not be manageable or superior to individual claims." This was her detailed analysis:

---

[4] The user agreement provides that eBay "may amend this Agreement at any time by posting the amended terms on [www.eBay.com]," and that eBay "will notify [users] through the eBay Message Center" and/or by email of the amended terms.

[5] "High-volume" sellers were those with 400 or more transactions during the preceding three months; those with fewer than 400 were "low-volume."  Sellers who were evaluated on a three-month lookback in August 2014 were aware of the new standards at all times and had ample notice of the new requirements in order to make any necessary changes to their business practices.

"MANAGEABILITY AND SUPERIORITY

"The seller rating system claim would not be manageable or superior to individual claims.

"Assuming the procedure and/or substance of the August 2014 change to the Seller Rating System were a breach of the implied contractual duty of good faith, then the court would need to provide a manageable and superior remedy. The court could determine class wide damages, but that would not be appropriate on the facts of this case due to the individual variations in causation and damages. The court could set a phase two of the trial for hearing individualized claims. (*Int'l Bhd. of Teamsters v. United States* (1977) 431 U.S. 324, 360–361.) Individualized hearings would not be superior to permitting individual small claims actions. California law suggests that a class action that requires individuals to make individual claims is inconsistent with the purpose of class actions. (*Hypertouch v. Superior Court* (2005) 128 Cal.App.4th 1527, 1543–1550.)

"The court could order injunctive relief such as directing eBay to reopen all the complaints in the relevant time period, to permit [sellers] to submit new information, to reevaluate the claims and to adjust seller status accordingly. That would be practicable for the court, but it would return the sellers to the eBay dispute resolution system that they assert is unfair.

"Following review and resolution of individual claims, whether by the court, a hearing officer, or by eBay, the court would need to determine consequential damages. The claimed injury is not limited to the individual disputes and also encompasses the consequential damage attributable to the changes in seller status. [Citation.] The members of the class would need to present evidence of past average sales, actual sales after the August 2014 seller status adjustment, and hypothetical future absent the August 2014

10

seller status adjustment.  Even if the court established a truncated procedure for consequential damages, this would likely be unmanageable and in conflict with the California law that suggests individual claims procedures are disfavored.  (*Hypertouch v. Superior Court*, *supra*, 128 Cal.App.4th at pp. 1543–1550.)"

As noted above, Judge Smith later addressed this issue in connection with plaintiffs' motion for reconsideration where, denying reconsideration, she elaborated on the reasons for her conclusion on the seller ratings system class:

"First, '[i]n this case, the variations in the potential damages suffered by persons with seller ratings system claims would make it impracticable to determine class-wide aggregate damages' because '[t]he claimed injury is not limited to the individual disputes and also encompasses the consequential damage attributable to the changes in seller status.'  [Citation.]

"Second, . . . 'likely complications of managing the variations in the claims of the putative class members would outweigh the likely benefits of class certification.' "  Thus, plaintiffs' seller ratings claim would be unmanageable as a class action because the extensive individualized inquiries needed to determine "causation" and "damages" issues would at a minimum require:  "[t]he members of the class . . . to present evidence of past average sales, actual sales after the August 2014 seller status adjustment, and hypothetical future sales absent the August 2014 seller status adjustment.

"Third, '[e]ven if the trier of fact could determine aggregate damages, the apportionment among the members of the class would pose greater challenges than usual due to the individual variations in the claims for lost profits.  The trial would therefore have to be a two-stage trial with class-wide

11

damages followed by individualized hearings on direct and consequential damages. Individualized hearings would not be superior to permitting individual small claims actions.' "

In sum, Judge Smith concluded that it would be unwieldly to make such individualized determinations across numerous class members, and thus the proposed class was not manageable or superior to individualized claims. This conclusion supports denial of class certification. (*Diamond v. General Motors Corp.* (1971) 20 Cal.App.3d 374, 378 [class proceeding unmanageable where there were significantly disparate interests within alleged class, and the right of each member to recover, and the amount of recovery, depended on substantial individual issues].) As a leading commentator puts it, the "most likely to be unmanageable are those involving myriad individual issues." (2 Newberg on Class Actions (5th ed. 2021) § 4:72.) Or as *Brinker* succinctly puts it, manageability is an issue for the "trial court to decide . . . in the fullness of its discretion." (*Brinker*, *supra*, 53 Cal.4th at p. 1055.) That discretion was not abused here.

Plaintiffs do not rebut—indeed, even attempt to rebut—any of Judge Smith's findings, offering no argument that causation could be determined on a class-wide basis or that assessing the damages could be done without numerous individualized inquiries into complex questions of consequential lost profits and other claimed damages. Rather, plaintiffs assert that Judge Smith found that common issues would predominate and, pointing to her tentative ruling as to manageability, make the accusation that she "did an about-face and stated that the seller [ratings] claim as a class action would not be manageable or superior to individual claims." As we understand it, plaintiffs argue that because Judge Smith found common questions predominated as to liability, she had to find that the class would be

manageable and superior.  This is wrong, as *Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1 (*Duran*)—a case Judge Smith cited—makes clear.

*Duran* involved the "exceedingly rare beast:  a . . . class action that proceeded through trial to verdict." (*Duran*, *supra*, 59 Cal.4th at p. 12.)  The trial court returned a verdict of some $15 million with an average recovery of over $57,000 per class member.  The Court of Appeal reversed and ordered decertification.  The Supreme Court affirmed, and decertified the class action, with language particularly apt here.  The Court first noted that it has "cautioned that class treatment is not appropriate 'if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover . . . .' " (*Id.* at p. 28, citing *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 459.)  And on the next page, the Court instructed that "[t]rial courts must pay careful attention to manageability when deciding whether to certify a class action. In considering whether a class action is a superior device for resolving a controversy, the manageability of individual issues is just as important as the existence of common questions uniting the proposed class." (*Duran*, *supra*, 59 Cal.4th at p. 29.)  In short, "[E]ven if questions of law or fact predominate, the lack of superiority provides an alternative ground to deny class certification." (*Basurco v. 21st Century Insurance Co.* (2003) 108 Cal.App.4th 110, 120.)

As *Duran* instructed, Judge Smith paid "careful attention" to manageability, and based her denial of class certification of the seller ratings system class on plaintiffs' failure to adequately address manageability and superiority concerns, concluding that individualized variations in causation and damages made class-wide resolution not superior to separate, individual adjudication of grievances.

Citing without discussion many cases and various boilerplate principles of class action law, plaintiffs assert that "[t]he necessity for an individual determination of damages does not weigh against class certification." Maybe not. But plaintiffs' assertion ignores that the setting here is not simply about individualized damages, but numerous individualized damage and causation issues. For example, certifying a seller ratings class would require the trial court to look at transactions during the time period of August 20, 2013 through August 20, 2014, to determine which, if any, caused any reduction in their seller ratings, which look would involve issues such as these: did the transaction accrue a defect; was the defect part of the new rubric; and did eBay actually include the defect in the seller's assessment or did the seller benefit from the protections eBay employed to protect sellers from falling below standard? In other words, the claim that eBay "retroactively" applied the 2014 seller ratings update to intentionally downgrade a seller's rating status would inevitably require numerous individualized inquiries into the timing and nature of the defects that may have caused a seller to be downgraded, and whether the downgraded status actually resulted in selling limits or other consequences—not to mention an analysis of whether any particular seller would have retained his or her previous status under the prior ratings standards. On top of all that, it was undisputed that some plaintiffs were not adversely affected by the new standards.

Plaintiffs propose, for the first time on appeal, that "the possible use of survey evidence or testimony from a random representative sampling of class members can certainly be explored to facilitate the necessary calculations." Passing over the tardiness of the proposal, it is manifestly insufficient. As our colleagues in Division One put it: "It is not sufficient, in any event, simply to mention a procedural tool; the party seeking class certification

14

must explain how the procedure will effectively manage the issues in question, and plaintiff has failed to do so here." (*Dunbar v. Albertson's Inc.* (2006) 141 Cal.App.4th 1422, 1432; see also *Block v. Major League Baseball* (1998) 65 Cal.App.4th 538, 545 [denying certification where plaintiff did not present a concrete plan, the court said, "We cannot conclude the trial court erred when it failed to consider something the plaintiffs never proposed"].)

In one paragraph in their brief, plaintiffs assert that "the issue of 'manageability' was never mentioned in any of the papers [here]," nor in the tentative ruling, nor at oral argument. Assuming for purposes of discussion that plaintiffs' representations are accurate,[6] we do not understand how this avails them. As noted, the burden is on plaintiffs to demonstrate that class certification is appropriate, a burden that requires them to demonstrate, among other things, "substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker*, *supra*, 53 Cal.4th at p. 1021)—a burden, we hasten to add, plaintiffs acknowledged below.[7] Plaintiffs have not made the required demonstration.

---

[6] eBay asserts that "[t]o suggest that the trial court injected this issue into the case is wrong. The logistical challenges the trial court considered— that it would be impossible to resolve unique questions of causation and damages across numerous putative class members—were briefed by eBay, responded to by [plaintiffs], addressed at the hearing, and then litigated a second time on [plaintiffs'] motion for reconsideration."

[7] In their class certification motion plaintiffs acknowledged that: "The party advocating class treatment must demonstrate . . . substantial benefits from certification that render the proceeding as a class superior to the alternatives."

15

**Judge Smith's Denial of a Money Back Guarantee Class is Supported by the Record**

As noted, plaintiffs' motion also sought to certify a money back guarantee class consisting of "all persons or entities who are domiciled in California who, at any time between January 1, 2010 and December 31, 2018, were sellers listing and selling items using the eBay internet platform." Their essential position was that class certification was proper given the alleged "common practice . . . not to consider the evidence of the eBay sellers" in resolving buyer-seller disputes, allegedly to "ensure" that buyers cannot lose dispute resolution cases. Plaintiffs' second argument here is that Judge Smith erred in denying certification of this class because plaintiffs "established by substantial evidence [eBay's] liability through common proof."

It is probably enough to say that assuming plaintiffs' argument is correct—that they "established by substantial evidence" their claim for their position—the issue is whether there is substantial evidence supporting Judge Smith's ruling. (*Wet Seal*, *supra*, 210 Cal.App.4th 1341; *Brinker*, *supra*, 53 Cal.4th 1004.) As *Brinker* puts it, a ruling on certification "will not be disturbed unless . . . it is unsupported by substantial evidence." (*Id.* at p. 1022.) There is substantial evidence here—as plaintiffs' brief as much as admits.

The user agreement provides that "[b]uyers and sellers permit [eBay] to make a final decision at our sole discretion, on any claim that a buyer files with eBay under the eBay Buyer Protection Policy." The money back guarantee applies when a buyer reports or complains that an item was not delivered or was not as described in the listing. Then, after a complaint has been submitted, eBay opens a claim, assigns it a number, and informs the seller a complaint has been registered. The seller is given the first opportunity to resolve the complaint independently, without eBay's

intervention. If the buyer and seller are unable to resolve the dispute after three business days, either party can escalate the claim and ask eBay for assistance. At that point, an eBay customer service representative enters the picture.

The customer service representative is expressly instructed to resolve the claim based on the facts of a particular case. As plaintiffs acknowledged below, customer service agents look at the evidence, including messages between the buyer and the seller, the listing information for the item, the historical buying/selling patterns of the parties, and information regarding the particular transaction, such as delivery status. If the agent believes more information is needed, he or she may place the claim on hold and request additional information or documentation from the parties. And if the decision is in favor of the buyer, a seller who disagrees may appeal within 30 days and may submit additional information or documentation for consideration by a second eBay customer service agent.

Plaintiffs' brief discusses at some length the testimony of eBay employee Chhabria. In plaintiffs' words, eBay "claims that its policies clearly establish that eBay considers evidence provided by sellers in deciding the outcome of buyer/seller disputes. The only evidence submitted by eBay supporting such a claim is provided in the declaration of Ms. Chhabria." While we do not agree that Chhabria's declaration is the "only evidence," it is, as plaintiffs admit, evidence, which evidence is by itself sufficient, as we confirmed in *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767–768: "The testimony of one witness may provide substantial evidence." (See generally, Eisenberg, et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2020) ¶ 8:52. (Eisenberg).)

17

Chhabria, eBay's director of buyer protection, testified that eBay has a policy and practice of reviewing seller evidence and ruling in favor of sellers whenever appropriate. And to substantiate that testimony, Chhabria attached to her declaration eBay customer-service training manuals that show how eBay customer service agents are trained to resolve buyer-seller disputes. Those manuals direct the agents to consider seller evidence; they also describe the circumstances that should lead to a decision of "buyer fault," all of which means eBay customer service agents are trained to find against buyers—and in favor of sellers—where the evidence suggests that is the proper outcome.

Chhabria's evidence also demonstrated that between January 1, 2010, the beginning of the class period, and December 31, 2018, claims were decided in favor of buyers approximately 69.8 percent of the time. That means, of course, that over 31 percent of disputes were decided in favor of sellers.[8] As Judge Smith put it, this statistic "strongly suggests that in a sizeable proportion of the claims [eBay] was considering the evidence offered by the sellers and that it did not have a *consistent practice of deciding* claims in favor of buyers." This inference from eBay's statistical evidence was reasonable and cannot be disturbed on appeal. (*Sav-On Drugs*, *supra*, 34 Cal.4th at pp. 328–329.)

Beyond Chhabria's declaration, other documentation in the record demonstrates that eBay devotes significant resources to identifying buyers

---

[8] Indeed, some plaintiffs admitted they won disputes with buyers, or lost disputes as buyers, during the relevant period. For example, plaintiff Junes won approximately 15 percent of the time; plaintiff Amrikhanyan had situations where he appealed and had an adverse result overturned in his favor; and plaintiff Cobb lost the only claim he had as a buyer. Moreover, some of the non-party declarations submitted by plaintiffs confirmed that those sellers won disputes with buyers after eBay considered their evidence.

who are abusing eBay's policies and to protecting sellers from "fraudulent returns." These documents show that eBay had no policy for uniformly ignoring seller evidence and siding with buyers, and instead show just the opposite.

Plaintiffs assert they "provided substantial evidence in the form of admissions by several eBay customer service agents" allegedly to the contrary. The problem for plaintiffs is that, as noted, Judge Smith sustained eBay's objections to the claimed evidence on which plaintiffs rely. So, to rely on this is improper.[9]

In any event, Judge Smith addressed the declarations and weighed their effect, ultimately to conclude she was not "persuaded," finding that "given the volume of transactions and resulting complaints, it is inevitable that there will be many persons who disagree with the result of the dispute resolution process." Moreover, she explained, citing *Kizer v. Tristar Risk Mgmt.* (2017) 13 Cal.App.5th 830, 844 and *Dunbar v. Albertson's, Inc.*, *supra*, 141 Cal.App.4th 1422, this anecdotal evidence was not enough to show a

---

[9] In a one-paragraph argument at the end of their brief, plaintiffs contend that the statements made by the customer service agents were admissible under Evidence Code sections 1222 and 1250, subdivision (a). Plaintiffs cite nothing in support of the brief argument, but instead refer back to their position in the trial court. This is improper. As the leading appellate practice guide puts it, "**No incorporation of trial court argument by reference:** A brief may not 'incorporate by reference' an argument contained in a document filed in the superior court (e.g., a supporting memorandum). Such practice does not comply with the CRC [California Rules of Court, rule] 8.204(a)(1)(B) requirement that an appellate brief 'support each point by argument and, if possible, by citation to authority.' (*Salehi v. Surfside III Condominium Owners Ass'n.* (2011) 200 Cal.App.4th 1146, 1162; *Parker v. Wolters Kluwer U.S., Inc.* (2007) 149 Cal.App.4th 285, 290–291—appellate court disregarded arguments from trial court points and authorities 'incorporated' by reference into opening brief." (Eisenberg, *supra*, ¶ 9:162.5.)

19

practice sufficiently uniform to subject eBay to a class-wide breach of contract claim that would reach millions of user disputes. (See *Brinker*, *supra*, 53 Cal.4th at p. 1052 ["anecdotal evidence of a handful of individual instances" does not establish "substantial evidence [of] a uniform, companywide policy . . ."]; *Arenas v. El Torito Restaurants, Inc.* (2010) 183 Cal.App.4th 723, 730 [individual declarations insufficient for class certification, as plaintiffs must provide "common evidence to support extrapolation from individual experiences to a class-wide judgment that is not merely speculative"].) Plaintiffs ignore Judge Smith's analysis, directing us to the anecdotes without mentioning that Judge Smith found them unpersuasive.

In sum, Judge Smith found that plaintiffs had failed to show eBay had a "uniform practice" of ignoring seller evidence and ruling in favor of buyers inconsistent with its written policy. (See *Brinker*, *supra*, 53 Cal.4th at p. 1051 [requiring proof of a "systematic company policy"]; *ABM Industries Overtime Cases* (2017) 19 Cal.App.5th 277, 310 [inquiring into "uniform practice" of defendant]; *Cruz v. Sun World Internat., LLC* (2015) 243 Cal.App.4th 367, 384, disapproved on another ground in *Noel v. Thrifty Payless, Inc.* (2019) 7 Cal.5th 955, 986, fn. 15.) Plaintiffs do not contest that this was the proper inquiry or challenge the legal framework Judge Smith applied. They essentially argue only that Judge Smith did not properly evaluate and interpret the evidence before her. Such an argument must fail, as we have no authority to substitute our decision for that of a trial court with regard to "inferences to be drawn from the facts." (*Sav-On Drug Stores, Inc. v. Superior Court*, *supra*, 34 Cal.4th at p. 328.) The issue is whether there is substantial evidence supporting Judge Smith's determination. And

there is, as demonstrated by the testimonial, documentary, and statistical evidence discussed above.[10]

Were all that not enough, plaintiffs admitted in depositions that their claim alleging that the money back guarantee is systematically biased was inherently fact based and individualized. For example, plaintiff Cobb testified that in determining who was right or wrong in any dispute you "would have to dig into the facts of [the] specific transaction." And Cobb and Jancik admitted that whether a seller or buyer is at fault depends on the specific facts of the dispute.

Finally, plaintiffs describe at length eBay's practice of auto-adjudication as claimed evidence of a uniform practice inconsistent with eBay's policy. eBay has never denied that in circumstances where the

---

[10] Plaintiffs' fundamental argument regarding some of this evidence is that Chhabria is not qualified to testify regarding eBay's dispute resolution process because "she is not an eBay customer service agent." Judge Smith overruled this same objection below, a ruling that cannot be disturbed here, where plaintiffs do not even support that point. (See *In re Sade C.* (1996) 13 Cal.4th 952, 994.) In any event, Chhabria is qualified to address the issue, as she is the director of eBay buyer protection and responsible for the very program that oversees the buyer-seller disputes in question.

Plaintiffs argue that any statistical evidence should not be credited because Chhabria did not attach the underlying data to her declaration. Plaintiffs made the same argument below, an argument Judge Smith rejected, finding there was "sufficient foundation" for the statistic in the declaration itself. Plaintiffs also characterize the statistic as a "conclusory opinion." But Chhabria reviewed the buyer-seller disputes for the relevant period and stated the percentage of disputes that the seller won. That is not an "opinion."

Finally, plaintiffs assert, however quizzically, that Chhabria's statement was made "in furtherance of litigation." That is true of any declaration filed in support of motion briefing—and not a recognized evidentiary objection.

dispute can be resolved by objective criteria, it may adjudicate buyer-seller disputes automatically, with a right of appeal for either party. Regardless, suffice to say that Judge Smith considered auto-adjudication arguments and found they were immaterial to the class certification determination for an even simpler reason: plaintiffs' evidence suggested millions of other disputes were adjudicated by eBay claims agents, meaning that any auto-adjudication practice was not uniform across the proposed class. Plaintiffs offer nothing to the contrary.

## DISPOSITION

The order is affirmed. eBay shall recover its costs on appeal.

_____

Richman, Acting P. J.

We concur:

_____

Stewart, J.

_____

Miller, J.

*Chen, et al., v. eBay* (A158417)